James McDonald, Appellee, v. John P. Green, Appellant.

**MASTER AND SERVANT:** Safe Place to Work—Nondelegable Duty
1   —Negligence of Vice-principal as Negligence of Principal. Negligence, either of omission or commission, of a vice-principal, while acting as such, by which the place of work of the servant is rendered unsafe, is the negligence of the principal.

PRINCIPLE APPLIED: Defendant was laying water mains in a ditch 6 feet deep and 2 feet wide, in soil composed of crushed rock on top, then a mixture of black sand and a little clay, with quicksand beneath. It was in issue whether one B was defendant's foreman with power to employ, pay and discharge employees and power to direct such employees when and where to work and what to do. B had not planked or braced the walls of the ditch to prevent caving. B directed plaintiff to go into the ditch and prepare the bottom thereof for the mains. Plaintiff obeyed. B and another employee then went across the street, picked up a 250-pound main, carried it to the edge of the ditch where plaintiff was working and, plaintiff alleged, permitted it to there fall upon the ground. The ditch thereupon caved in and plaintiff was injured. *Held,* (a) if B did have the authority alleged, and (b) if the main was dropped imprudently and was the proximate cause of the cave-in, *or* (c) if it was negligent to fail to plank or brace the walls, and such failure was the proximate cause of the cave-in, and (d) plaintiff was not guilty of contributory negligence, then defendant was liable.

**MASTER AND SERVANT:** Safe Place to Work—Nondelegable Duty
2   —Liability of Master for Vice-principal. Where the master substitutes another in his place to perform his nondelegable duty to furnish and maintain a reasonably safe working place for the servant, he is responsible for the negligent acts of commission or omission of such substituted person.

PRINCIPLE APPLIED: (See No. 1.)

**MASTER AND SERVANT:** Assumption of Risk—Knowledge and
3   Appreciation of Danger. Knowledge of the danger, or duty to anticipate the danger, and appreciation of such danger, lie at the foundation of the doctrine of "assumption of risk". In the ab-

sence of showing of these fundamental elements, such question should not be submitted to the jury.

PRINCIPLE APPLIED (additional to No. 1): The final work of preparing the bottom of the ditch for the mains was new to plaintiff, and he so informed B, who assured him it was safe. Plaintiff did not know it was necessary or proper or possible to brace the walls of the ditch or that, if such was done, it would render his place of work more secure. There was evidence that such bracing was possible and necessary, because walls of the character in question were liable to cave in, in the absence of such bracing. *Held*, the record was wholly insufficient to justify the submission to the jury of the question of the assumption of the risk by plaintiff.

MASTER AND SERVANT: Failure to Furnish Safe Working Place —Intoxication of Foreman—Evidence. The habits of the master's foreman to become intoxicated, in so far as known to the master when he employed the foreman, may be considered on the issue whether the master had, through such foreman, furnished a safe working-place.

*Appeal from Winneshiek District Court.*—Hon. W. J. Springer, Judge.

Tuesday, October 19, 1915.

Action for personal injuries. Judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Dunn & Carlson* and *John McCook*, for appellant.

*E. R. Acres*, for appellee.

Gaynor, J.—This action is brought by plaintiff to recover for personal injuries claimed to have been sustained on August 23, 1913, while engaged in digging a trench. At the time of the accident, the defendant, under contract with the city of Decorah, was engaged in laying water mains in one of the streets of the city. The plaintiff was in defendant's employ, and with others was engaged in excavating ditches for the purpose of laying the mains. There is evidence which tends to show that one Jack Blauzer was hired by the defendant to

oversee and supervise the work; that he paid the men engaged in the work by checks; that he told them where to work and what to do; gave all the directions as to the work,—to see that the ditches were properly filled and the water mains calked. It was his duty to see that the water mains were laid in their proper places for the purposes for which they were to be used; it was his duty to see that the trenches were properly excavated and to determine their depth and width.

There was evidence tending to show that this ditch, at the time of the injury, was about a block in length, dug in 20-foot sections, with 5 or 6 feet of dirt left between the 20-foot sections, through which a tunnel was made for inserting the pipes. The trench in question was about 6 feet deep, and about 2 feet wide at the top and about 1½ feet wide at the bottom, and ready for bottoming. At the time of the accident, the plaintiff was engaged in bottoming this trench. Bottoming consists in finishing the ditch by bringing it to a final depth called bottoming. A short time before the injury, the plaintiff was directed by Blauzer to go, for that purpose, into the particular ditch where he was injured. Before that, he had been engaged in what is called top digging. The soil through which the ditch was worked consisted of crushed rock on the top, then a kind of black sand with a little clay in it, and the rest of the way down there was yellow quicksand. There was about 4 inches of crushed rock, and about 10 or 12 inches of black sand, and quicksand from that to the bottom.

The plaintiff testified that he knew nothing about this particular kind of work, and so informed Blauzer, but Blauzer said he would stand by and direct him. Plaintiff had been engaged in digging trenches about two weeks, at the time he was injured. After entering the ditch, on direction of Blauzer, for the purpose of bottoming it, the plaintiff had been actually engaged about three quarters of an hour when he received his injuries. These water mains that were to go into the ditch when completed were strung along the opposite side

of the street.   They weighed about 250 pounds, were made of cast iron, were 16 to 18 feet long, and were hollow.   Blauzer and another carried one of these water mains to the ditch. where plaintiff was working.   It is claimed that, when they reached the edge of the ditch, the water main was dropped,— was allowed to fall with its full weight on the edge of the ditch; that this caused the ditch to cave in, and plaintiff was injured.   It is charged, and there was evidence to support the charge, that these ditches, when excavated, were not braced; that there was no proper bracing or planking of the walls of the ditch in which plaintiff was working.

Plaintiff brings this action to recover for the injuries so received, and predicates his right to recover on what he charges to be the negligence of the defendant as follows:

(1) That Jack Blauzer, who was placed over plaintiff, and under whose direction plaintiff was required to work, was wholly incompetent and untrustworthy, and a man addicted to the excessive use of intoxicating liquors, and that defendant was careless and negligent in employing and placing such a man about and upon the work as foreman and manager.

(2) That the defendant was negligent in failing to brace the walls and in leaving them in such condition that they were liable to cave in and injure the workmen, and that the throwing of the water main on the edge of this ditch was the immediate cause of the dirt's caving in on the plaintiff, and that this act was due to the incompetency of and the intoxicated condition in which this man Blauzer was at the time.

The defendant admits that the plaintiff was in his employment and sustained some injuries, but denies all charges of negligence; alleges that plaintiff knew Jack Blauzer and his habits; knew and assumed the risk attending on the employment of each person carrying on the work; assumed all risks and hazards incident to carrying on the work; alleges that none of the risks incident to the work were due to any failure on the part of the defendant to furnish proper works,   ma-

chinery or appliances, and that the plaintiff knew, appreciated and understood and voluntarily assumed the risk incident to the work; that he assumed the risk incident to the employment of Jack Blauzer, including any risks incident to the conduct of his fellow servants; that Blauzer was a fellow servant.

Upon the issues tendered, the cause was tried to a jury, and a verdict returned for the plaintiff; judgment being entered upon the verdict, defendant appeals, and assigns twenty-two grounds for reversal. The errors assigned are divided by the appellant into five parts, and are stated as follows:

1. The court's instructions submitting to the jury the question whether the defendant was liable on account of the negligence (if any) of Jack Blauzer in dropping the pipe upon the edge of the trench (if he did so), and the refusal of the court to withdraw this question from the jury at defendant's request, were prejudicial error; because such act, even though negligent, was the act of a fellow servant, for which the defendant was not liable.

2. The instructions defining the distinction between the act of a vice-principal and that of a fellow servant were erroneous in that they failed to make the character of the act the test, and made the test depend upon the rank and authority of the negligent servant, and instructed the jury that, if Jack Blauzer had authority to direct and manage the work then being done, his acts in doing the work were acts for which the defendant was liable, if negligent. Such instructions were further erroneous in instructing the jury that, if Blauzer negligently dropped the pipe and such negligence caused the plaintiff's injury, and if Blauzer was in charge of the work, hired, discharged and paid the men employed and directed them how to work and where to work, and if it was defendant's duty through Blauzer to maintain a reasonably safe place for plaintiff to work in at the time, and plaintiff himself was without negligence, then the act of Blauzer

in dropping the pipe was binding upon the defendant, and the defendant would be liable.

3. The question of defendant's negligence in failing to curb or protect the bank of the trench from caving was erroneously submitted, because his failure so to do was not negligence, and because the plaintiff had assumed the risks of this method of doing the work. In any event, the question of assumption of the risk was one for the jury, and it was not only not submitted, but specifically withdrawn.

4. It was error to submit to the jury the question of the defendant's negligence in employing Jack Blauzer, and to refuse to withdraw this question from the jury at defendant's request, because the only incompetency claimed was because of intoxication, and the plaintiff had assumed the risks attendant thereon.

5. The court erred in refusing to direct a verdict for the defendant.

It will be noted from the foregoing that the real complaint here is of the instructions of the court to the jury. That these complaints may be understood, we deem it well to set out the instructions given by the court covering the matters complained of, as follows:

"5. There is no claim that the defendant personally did, or omitted to do any of the acts which are alleged by plaintiff to be negligence in this case. The acts complained of and the duties alleged to have been omitted and which plaintiff claims makes defendant liable for his injuries, are claimed by plaintiff to have been omitted or committed by one Jack Blauzer, who, plaintiff says, was defendant's foreman, and in charge of the work upon which plaintiff was employed. You are instructed, that, if you find from a preponderance of the evidence, that Jack Blauzer was in fact in charge of said work, that he hired and discharged the men employed upon said work, that he paid the men for their work and that he directed the men as to how and where to work, then and in that case,

any act or omission to act on the part of Jack Blauzer, while employed in the prosecution of said work, and while acting for and instead of the defendant, and not as a co-employee, would be the act or omission of the defendant, and have the same force and effect as if done or omitted to be done by the defendant himself.

"6. It was the duty of the defendant to furnish a reasonably safe place for the plaintiff to work in, and to use such reasonable and ordinary care to maintain the place where plaintiff was at work, in a safe condition, as a reasonably prudent person would use under like and similar circumstances, and if you believe, from a preponderance of the evidence, that Jack Blauzer was acting for and in place of the defendant, at the time the accident happened, and that the acts of the said Blauzer were binding upon defendant, as particularly defined in paragraph five of these instructions, and the said Jack Blauzer did any act alleged by plaintiff which a reasonably prudent person would not do under like circumstances, or omitted to do some act so alleged which said person would do under like circumstances, and that said omission to perform such duty or act so done, if it was the proximate or direct cause which brought about the cave-in and the injury to plaintiff, defendant would be responsible therefor, and your verdict should be for plaintiff in such sum, if any, as you find him entitled to, providing you further find plaintiff was not guilty of contributory negligence which brought about or contributed to his said injury.

"7. As bearing upon the question of defendant's negligence in furnishing a reasonably safe place in which plaintiff was at work, you will consider all the evidence touching or shedding light on the competency of Jack Blauzer to manage and direct the work in which they were engaged when plaintiff was injured, because of his habits while doing the same, in so far as the evidence shows they were known to defendant when he employed him on the work in question, and whether or not, under the evidence and defendant's knowledge as

disclosed thereby, he should have been placed in charge of said work at said time, if you further find that the said Blauzer was guilty of some act of negligence as charged by plaintiff and as defined by these instructions, which was the proximate cause of plaintiff's injury, and that plaintiff did not contribute thereto. On the other hand, if you find that said Blauzer neither omitted or committed any act as charged which caused plaintiff's injury, then your verdict should be for defendant.

"9. It was not only the duty of the defendant to furnish plaintiff with a safe place in which to work, but it was also his duty to use reasonable diligence in keeping said place in a safe condition, and not to do anything which a reasonably prudent person would not do which would render the place where plaintiff was at work unsafe and dangerous; therefore, if you find, from a preponderance of the evidence that Jack Blauzer was in charge and control of the work, under instruction No. 5 hereof, at the time of the accident, and had authority to direct the men employed as to their duties, and that plaintiff, under the direction of said Blauzer, went into the ditch in question at the time and place alleged by plaintiff, and while at work therein, without fault or negligence on his part, was injured, and that said injury was caused by the caving of said wall, and that said cave-in was caused by said wall not being held in place, and that defendant was negligent in not curbing or otherwise preventing said wall from caving, or by the dropping on the top thereof the said water pipe, if he did so drop it, if said Blauzer was at said time acting in place of the defendant, and not as a co-employee or fellow servant, or by either or both causes, then and in that event, the defendant is liable to plaintiff for his damages, if any, which he has suffered, and you should so find.

"10. In determining whether or not defendant was negligent in not planking the wall in question or curbing it, you will not consider the happening of the accident within itself as evidence of his negligence, the happening of the accident

being no evidence of negligence on the part of defendant or contributory negligence of the plaintiff.

"12. If Jack Blauzer dropped the pipe on the bank where plaintiff was at work, and if Blauzer was defendant's foreman in charge of the work, as defined in paragraph 5 hereof, and if the dropping of said pipe caused or contributed to the cause of said bank caving in, and that a reasonably prudent man would not have so dropped said pipe under the circumstances as disclosed in this case, and plaintiff was injured by reason thereof, and you find it was the duty of the defendant through and by Jack Blauzer, to maintain a reasonably safe place for plaintiff to work in, at the time, and that the dropping of said pipe, in whole or in part, rendered unreasonably unsafe the place where the plaintiff was then at work, and that because of said act plaintiff was injured without fault upon his part, then and in that case, you will find that the act of the said Blauzer in dropping said pipe, if he did so, was binding on the defendant, and he would be liable and you should so find; on the other hand, if you find Jack Blauzer was not representing the defendant, as defined under paragraph 5 hereof, and that he was acting merely as a co-employee, then, and in that case, the defendant would not be liable and you should so find.

"13. A co-employee may be defined as a person who is a fellow servant, one of the same class or same employment, and one who does not, at the time he is performing an act, represent his master in relation thereto, or have authority in managing or directing the work then being done; and, under this instruction and paragraph 5 hereof, you will determine whether or not, at the time the said Jack Blauzer was handling said pipe, he was acting as a foreman and in place of the defendant, or whether his said act was that of a co-employee."

I. The first point made for reversal, hereinbefore set out, involves so much of the court's instructions as submits to the

jury, for its determination, liability based on the negligence
of Blauzer in dropping the pipe on the edge
of the trench. The contention of the defend-
ant is that this act, in and of itself, did not
lay the basis for recovery, for the reason that
the act of Blauzer in dropping the pipe was
the act of a fellow servant, for which, of
course, under the law, the defendant would not be liable. The
claim of the defendant is that the court should have with-
drawn from the consideration of the jury any liability based
upon this act of Blauzer's, and that, in submitting it as a
basis for recovery, the court erred. Counsel has not pointed
to 'the instruction or to those parts of the instruction of which
he complains. The criticism seems to be aimed at the entire
charge.

1. MASTER AND
SERVANT: safe
place to work:
nondelegable
duty: negli-
gence of vice-
principal as
negligence of
principal.

In the instructions given by the court, the jury were told
that it was the duty of the defendant to furnish the plaintiff
a reasonably safe place in which to work, and to use reason-
able and ordinary care to maintain the place in a safe con-
dition. That is the initial proposition, and it runs through
all the instructions. Clearly, this duty was enjoined upon
defendant by law. This duty he could not delegate to another,
and thereby relieve himself from responsibility. When he
put another in his place to discharge this duty, the duty
still rested upon him; and a failure to perform it, resulting
in injury to an employee, created a liability from which he
could not escape. If the master delegates to a servant, no
matter how menial, the discharge of a duty which he person-
ally owes to a servant, a failure to perform this duty by the
one to whom he has delegated it is the failure of the master.
It becomes his act done by the hand of another. The court said
in its instructions that, if the jury found that Jack Blauzer
was acting for and in the place of the defendant at the time
of the accident, in respect to maintaining a reasonably safe
place to work, the act of Blauzer was the act of the defendant,
and if the act of Blauzer was negligent,—that is, if he did

anything in respect thereto which a reasonably prudent person would not do under like circumstances, or omitted to do some act, (referring always to the acts charged as constituting negligence), which a reasonably prudent person would not omit to do under like circumstances,—and the doing or the omission to do was the proximate or direct cause which brought about the cave-in and injury to the plaintiff, then the defendant would be responsible. Or, in other words, that, if they found that it was the duty of the defendant, in furnishing plaintiff a safe place to work, to properly brace and plank the walls of the excavation in which plaintiff was directed to do his work, or if they found that, by reason of the nature and character of the ditch, a duty rested upon defendant to exercise care to see that the ditch in which plaintiff was directed to work was kept in a reasonably safe condition, then a failure on the part of the defendant, acting through Blauzer, to properly brace and plank the walls of the excavation, or the doing of any act which rendered the place unsafe, would be a violation of defendant's duty, for which he should be called upon to respond.

The court, in its instructions emphasizing the thought that the defendant was only liable for the act of Blauzer, when the act was done by Blauzer for and instead of the defendant, and not as a fellow servant or co-employee, said to the jury, referring to paragraph 5 of the instructions, that, if they found as a matter of fact that Blauzer was placed in charge of the entire work by the defendant, given power to hire and discharge the men employed upon the work, to pay the men for the work done, and to direct the men as to where, when, and how to work, then the act of Blauzer, when acting for the defendant in the discharge of the duties imposed upon the defendant and not as a co-employee of the same class and in the same employment with the plaintiff, would be the act of the defendant.

We find no just ground for this criticism of the instructions when read together and in the light of the fifth instruc-

tion, for the reason that it is the duty of the defendant to exercise reasonable care to see not only that the place in which plaintiff is placed to work is reasonably safe at the time he enters upon his work, but also to see that it is kept in a reasonably safe condition for the completion of the work. This duty rested upon the defendant, and he is bound in law to see that this duty is performed. If he places another in his place, to perform that duty, the failure of the other is the failure of the master; and if the jury found, as they might well find under this record, that Jack Blauzer was placed over these men and in charge of the entire work, with power to employ whom he would and discharge whom he would, and to direct how the work should be done, how and where the men employed should work, it became his duty, under the master, to see that the place in which the men were called to work was not only reasonably safe at that time, but was kept in a reasonably safe condition during the progress of the work; with this limitation, however, (a limitation which attached to the master as well as to Blauzer), that such dangers as were necessarily incident to the progress of the work, and which necessarily arose out of the prosecution of the enterprise,—which were created by and arose out of the work itself, and were incident to the very work which the servant was employed to do,—the servant assumed.

It will be borne in mind that the first work involved only top digging. After the work had progressed to a certain point, it became necessary to bottom the ditches for the purpose of laying the mains. Plaintiff had been engaged only in top ditching up to this time. He was then ordered by Blauzer into this ditch for the purpose of bottoming it. He told Blauzer then that he knew nothing of that kind of work, and Blauzer told him he would stand by and direct it; that it would be all right while he was there. Plaintiff, unconscious of any danger attending his work, went into the ditch and commenced the work of bottoming it. The lower portion of the ditch was quicksand; above that, clay and gravel. Blauzer

brought the pipe and threw it upon the edge of this ditch. By reason of the character of the wall and the fact that it was not braced, the dropping of this pipe caused it to cave in, and plaintiff received his injuries.

II. The second criticism is that the instructions were erroneous in so far as they attempted to define the distinction between vice-principal and fellow servant, in that they failed to make the character of the act the test as to whether the actor was a fellow servant or a vice-principal. It is claimed that the act is the only test; that the distinction between a fellow servant and a vice-principal does not depend upon rank or authority; that the mere fact that Blauzer had the authority to direct and manage the work, as recited in the fifth instruction, was not the true test by which the responsibility of the defendant for Blauzer's act should be measured.

2. MASTER AND SERVANT: safe place to work: nondelegable duty: liability of master for vice-principal.

The instructions must be read and understood in the light of the record made. In each of the instructions hereinbefore set out and complained of by the defendant, the court starts with the primary proposition,—the one that lies at the very threshold of plaintiff's complaint,—the one on which he bases his right to recover,—to wit, the duty of the defendant to exercise reasonable care to see to it that the place in which plaintiff was placed to work was reasonably safe, and that it was so kept during the progress of the work, so far as the nature and character of the work itself would permit. The court said it was not only the duty of the defendant to furnish plaintiff with a reasonably safe place in which to work, but it was also his duty to use reasonable diligence in keeping the place in a reasonably safe condition, and not to do anything which a reasonably prudent person would not do which would render the place where plaintiff was at work unsafe and dangerous.

On this point, the court said to the jury that, if they found that Blauzer was placed in control of the work and

had authority to direct the men as to their duties, as to where they should work and how, and, with this authority, directed the plaintiff to go into this ditch at the time and place where he entered, that the caving in was due to a failure to hold the bank in place by proper braces, and that the defendant was negligent in not curbing or otherwise preventing the walls from caving in, or that Blauzer was negligent in dropping the water pipe at the edge of the ditch, causing it to cave in, and they further found that Blauzer was, at the time, acting in place of the defendant in respect to the duty of keeping the ditch in a reasonably safe condition (the matter about which the court was talking), and that a reasonably prudent person would not have omitted the bracing, or would not have dropped the water pipe, when charged with the duty of keeping the place in which plaintiff was at work in a safe condition, the defendant was liable.

The instructions limit the inquiry and the liability to this duty of the defendant to furnish the plaintiff a reasonably safe place to work, and to the exercise of reasonable care to see that it was so kept. All that is said touching the liability of the defendant for Blauzer's act, or omission to act, relates to this primary duty that rested upon the defendant. That this duty rested upon the defendant is elementary, and needs no citation of authority. Defendant was not present to discharge this duty, and took no care to see that this duty was performed, except as he acted through Blauzer. When one places another in his position to discharge a duty which he cannot delegate to another and escape liability, he is responsible for the conduct of that other in respect to that matter, and that is all that the court told the jury touching defendant's liability for Blauzer's act.

In every instruction given, the court told the jury that, before they could find the defendant liable for the act of Blauzer, the jury must find that it was the duty of the defendant, through and by Blauzer, to maintain for the plaintiff a reasonably safe place in which to work. The act on which

liability is predicated is the act of defendant done through Blauzer, in violation of the duty which defendant owed plaintiff.

In the twelfth instruction given, the one most vulnerable to the objection urged by the defendant, the court tells the jury that, to find the defendant liable for the act of Blauzer in dropping this pipe, they must find that Blauzer was charged by the defendant with the discharge of that duty which the defendant owed to the plaintiff, to wit, to see that the place in which plaintiff was required to work was reasonably safe; that if the dropping of the pipe rendered the place unreasonably unsafe, the act of Blauzer in dropping the pipe would not create liability on the part of the defendant, unless they found that he had such full charge of the work that a duty rested upon him, as a representative of the master, to see that the place was kept in a reasonably safe condition for work.

We do not think the instructions are vulnerable to the second objection.

III. The third question raised by defendant for reversal relates to the defendant's negligence in failing to curb or protect the banks of the trenches from caving.

3. MASTER AND SERVANT: assumption of risk: knowledge and appreciation of danger.

The contention of the defendant is that this question should have been withdrawn from the jury; that defendant's failure in this respect was not actionable negligence, because the plaintiff assumed the risk of this method of doing the work.

Whether a person assumes a particular risk or hazard when he enters into the employment of another is sometimes a question of law, but often a question of fact. The nature of the work and the character of the risk are to be considered in determining this question. It is the duty of the master to furnish the servant a reasonably safe place to work. Dangers which inhere in the employment and which he knows, or by the exercise of reasonable care should know, are assumed.

This doctrine involves two elements: knowledge of the conditions out of which the danger arises, and an appreciation of the danger. It cannot be said that an employee assumes the risk of a danger of which he has no knowledge, or which, as a reasonably prudent person, he is not bound to anticipate, or which he is not in a situation to fully appreciate. The risks and hazards which the servant assumes are those risks and hazards which are incident to the business, or those of which he has knowledge, or of which, as a reasonably prudent person, he should have had knowledge. There can be no assumption on the part of an employee of a risk incident to an unsafe place to work, if he has no knowledge of the danger involved, or of conditions from which the injury proceeds. As bearing upon this point, see *Long v. Johnson County Telephone Co.*, 134 Iowa 336; *Stomne v. Hanford Produce Co.*, 108 Iowa 137; *Vohs v. Shorthill Co.*, 124 Iowa 471; *Coles v. Union Terminal R. Co.*, 124 Iowa 48; *Calloway v. Agar Packing Co.*, 129 Iowa 1; *Mace v. Boedker*, 127 Iowa 721; *Hartshorn v. Mardis Co.*, 165 Iowa 454.

Can it be said, as a matter of law, that the plaintiff, under the circumstances disclosed by this record, was chargeable with knowledge of the dangers incident to his work in attempting to bottom this ditch under the direction of Blauzer? We must remember that he was not engaged in this character of work before; that he so informed Blauzer; that Blauzer assured him that it was perfectly safe, and that he would stand by and supervise it. The record discloses that plaintiff did not know it was necessary or proper to brace the walls of the ditch, or that such a thing could have been done; or, if done, that it would render his position more secure. There is evidence that it can be done; that, under certain conditions, it is the proper and necessary thing to be done; that walls of the character of this are liable to cave in, in the absence of such support. Further than this, Blauzer, who was charged with the duty of seeing that the place remained reasonably

safe, negligently cast this heavy pipe upon the edge of the wall, thereby causing it to cave in. There is nothing in the record from which the jury could find that plaintiff assumed the hazards and risks incident to this particular work. There was no error in withdrawing it from the jury. There is no evidence that plaintiff assumed these risks, and no facts from which such an inference could be drawn.

IV. The fourth error relied on relates to the action of the court in submitting to the jury the question of defendant's negligence in employing Jack Blauzer, and the court's refusal to withdraw this question from the jury on defendant's request. This assignment rests upon the suggestion that the only claim of incompetency on the part of Blauzer was that he was intoxicated; that plaintiff knew this and assumed the risk attendant thereon. The court did not submit the question of the incompetency of Jack Blauzer, or the fact that he was intoxicated, as an independent ground of negligence, but said to the jury that they might consider all the evidence touching or shedding light upon the competency of Jack Blauzer to manage or direct the work in which they were engaged, because of his habits while doing the same, in so far as they were known to the defendant when he employed him on the work, and this only as bearing upon the question of defendant's negligence in furnishing a reasonably safe place in which to do the work assigned the plaintiff. The court did not submit the question as broadly as the facts of this case and the claims of the plaintiff would have justified. Upon this point, see *Scott v. Iowa Telephone Co.*, 126 Iowa 524.

4. MASTER AND SERVANT: failure to furnish safe working place: intoxication of foreman: evidence.

V. The fifth and last ground for reversal relates to the refusal of the court to direct a verdict for the defendant. We do not discuss this question. It involves the whole record. We have read the record and are satisfied that the court did not err in this respect.

We find no reversible error in the record and the case is therefore—*Affirmed.*

DEEMER, C. J., LADD and SALINGER, JJ., concur.